IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTOPHER D JONES,

      Petitioner,

v.                                  CASE NO. 1:07-cv-207-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Alachua County jury-trial conviction for robbery with a firearm, aggravated battery with a firearm, and dealing stolen property, for which he received two concurrent 18-year sentences for the first two charges and a 10-year sentence for the latter. Respondent has filed a response and appendix with relevant portions of the state-court record. Doc. 10. Petitioner was afforded an opportunity to file a reply but has not done so. Upon due consideration of the Petition, the Response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

### State-Court Proceedings

In a six-count Amended Information filed August 26, 1997, Petitioner was

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

charged, as relevant:[2] Count I - Robbery with a firearm; Count II - Aggravated battery with a firearm; and Count V - Dealing in stolen property. Respondent's Appendix Exhibit ("App. Exh.") A.  The charges stemmed from a March 7, 1997 armed robbery of a pawn shop in Alachua County, Florida.  Prior to trial, the state's motion to compel a blood sample from Petitioner was granted. App. Exh. B.  On January 12, 1999, Petitioner filed "Defendant's Amended Motion in Limine to Exclude FDLE DNA Evidence." App. Exh. C. An evidentiary hearing on this amended motion *in limine* was held February 3, 1999. App. Exh. D.  By order rendered April 23, 1999, Petitioner's amended motion *in limine* seeking to exclude DNA evidence was denied. App. Exh. E.  Following a hearing held February 25, 1998, App. Exh. F, by order rendered that same day, the trial court granted Petitioner's motion authorizing a defense DNA expert. App. Exh. G.  Jury trial proceedings commenced on May 19, 1999, and concluded the next day, May 20, 1999. App. Exh. H.

>   The evidence presented at trial by the state focused on DNA evidence that linked Petitioner to blood found on a jewelry display case that was smashed during the course of the robbery.  The robbery victim, Jim Mulligan, also testified that during the robbery he recognized Petitioner as a previous patron of the pawn shop.  Petitioner was found guilty on Counts I, II, and V, of the Amended Information, as charged. App. Exh. H at 524-25; J. At a hearing held August 12, 1999, Petitioner was sentenced on Counts I, II, and V of

---

[2] The trial court entered an order on August 23, 1999, vacating Petitioner's convictions for Counts III (theft) and IV (theft of a firearm) on double jeopardy grounds; Count VI (dealing in stolen property) was *nolle prossed* by the State at the commencement of trial on May 19, 1999, with written notice filed on August 20, 1999. App. Exh. A; H at 13; K at 1066-67.

conviction to three concurrent 18-year terms of incarceration as a habitual offender, with credit for 884 days time served. App. Exh. K.

Petitioner initiated an appeal, filing notice of direct appeal to the Florida First District Court of Appeal (DCA). App. Exh. M; Fla. R. App. P. 9.110(b). Petitioner, through different counsel, filed an initial brief, asserting four grounds for relief: (1) that the trial court erred in admitting DNA evidence that did not satisfy the standard for scientific evidence in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); (2) that the trial court erred in excluding expert testimony about the exclusion of FDLE DNA evidence in an unrelated trial two years earlier; (3) that the trial court erred in admitting hearsay; and (4) that the Florida Supreme Court's invalidation of the sentencing guidelines in force at the time of sentencing warranted a reconsideration of a habitual offender sentence. App. Exh. N. The First DCA affirmed *per curiam* without opinion. App. Exh. P.

Petitioner filed a *pro se* postconviction motion pursuant to Fla. R. Crim. P. 3.850, raising multiple claims of ineffective assistance of counsel. The trial court summarily dismissed several of the claims but held an evidentiary hearing on Petitioner's claims that his trial counsel rendered ineffective assistance for (1) failing to request all discoverable records of the FDLE related to the DNA evidence; (2) failing to obtain exculpatory police photos of Petitioner's face and hands; (3) failing to completely inform Petitioner of the State's plea offers; and (4) waiving, without authorization, Petitioner's presence at the restitution hearing. App. Exh. AA. At the evidentiary hearing, additional "bench notes" were discussed which revealed that the quantity of the DNA sample tested in the case was half that recommended by the manufacturer of the DNA testing kit. These notes were not made available to Petitioner's expert on DNA, Dr. William

Hauswirth, prior to Petitioner's trial. Dr. Hauswirth testified at the post-conviction evidentiary hearing that had he reviewed the "bench notes" prior to trial, his opinion would not have changed, but "would have been more forceful." On September 6, 2005, the trial court denied relief on all but one ground, directing that the order of restitution be vacated and a new restitution hearing be held. App. Exh. AA. On February 7, 2006, the court, *sua sponte*, corrected Petitioner's sentence on the charge of dealing in stolen property from the original 18-year sentence to the statutory maximum of 10 years. App. Exh. GG. The First DCA affirmed, *per curiam,* on April 4, 2007.

Petitioner then filed the instant Petition, which Respondent concedes is timely. As grounds for relief, Petitioner asserts claims that (1) that the trial court erred in admitting DNA evidence that did not satisfy the standard for scientific evidence in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); (2) that the trial court erred in excluding expert testimony about the exclusion of evidence regarding FDLE DNA procedures in an unrelated trial two years earlier; (3) trial counsel was ineffective for failing to request all discoverable records of the FDLE related to the DNA evidence; and (4) the state's failure to provide the defense with all records of the FDLE related to the DNA evidence violated *Brady v. Maryland*, 373 U.S. 83 (1963). Respondent argues that the evidentiary claims raised in Petitioner's habeas petition are not exhausted for purposes of federal habeas review because they were not raised as federal claims before the state court, and that such claims are now procedurally barred. Respondent further argues that as to the ineffective-assistance claim, relief is not warranted on the merits.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all

state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and legal bases for the claim.  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir.2005) (quotations and citations omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*. at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a

petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

A review of the state court record supports a conclusion that Petitioner's claims relating to the inclusion of the DNA evidence, exclusion of expert testimony regarding an unrelated case, and alleged *Brady* violation were not fairly presented as constitutional claims before the state court. At neither the pre-trial hearing on the motion *in limine* nor during the trial itself did Petitioner assert a constitutional basis for his contention that admission of the DNA evidence was in error. The first time a federal constitutional basis was raised for either alleged evidentiary error occurred in Petitioner's initial brief on direct appeal. Petitioner challenged the rulings admitting DNA evidence and excluding expert testimony at the trial level, but these challenges were based solely on state evidentiary law. The "bench notes" that are the focus of the alleged *Brady* violation were compelled during post-conviction proceedings, but Petitioner failed to raise any *Brady* issue to the trial court. The first time the alleged *Brady* violation was raised occurred in the appeal of the denial of Petitioner's 3.850 motion.

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." *Upshaw v. Singletary,* 70 F.3d 576, 578-579 (11th Cir. 1995) (citations omitted). This means that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural

rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Alderman v. Zant,* 22 F.3d 1541, 1549 (11th Cir. 1994) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)).

Notwithstanding Petitioner's failure to assert constitutional claims before the trial court on the two alleged evidentiary errors, Petitioner did not sufficiently assert them as constitutional claims on direct appeal. Passing references to the U.S. Constitution, without any discussion or analysis of federal constitutional principles, is insufficient to amount to fair presentation for exhaustion purposes. *See McNair,* 416 F.3d at 1303-04 (one citation to federal case, and passing citation to federal constitutional provisions in closing paragraph of brief, are the types of "needles in the haystack" that are insufficient to satisfy the exhaustion requirement).

On the basis of this record, the Court concludes that with regard to Petitioner's challenges to the admission of DNA evidence and to the exclusion of testimony because of a ruling in an unrelated case, Petitioner's passing reference to the Sixth and Fourteenth Amendments of the U.S. Constitution, and the Due Process clause under the Fifth and Fourteenth Amendments were insufficient to raise a federal constitutional claim. Indeed, all of the arguments asserted by Petitioner in state court relied exclusively on state court cases. Accordingly, the Court concludes that Petitioner's claims alleging improper admission of DNA evidence and improper exclusion of expert testimony were not exhausted as federal constitutional claims in the state courts.

Petitioner raised his *Brady* violation claim for the first time on appeal from his motion for post-conviction relief and did not raise the issue before the trial court. Issues not objected to at trial and preserved for appellate review can only be reviewed for

fundamental error. *See*, *e.g., Jackson v. State,* 983 So. 2d 562, 568 (Fla. 2008) ("Errors that have not been preserved by contemporaneous objection can be considered on direct appeal only if the error is fundamental."). Petitioner's initial brief on appeal from the denial of post-conviction relief lacked any assertion that the alleged *Brady* violation was fundamental error. Failure to assert an argument in an initial brief precludes an appellant from raising the argument in a reply brief. *Williams v. State*, 845 So. 2d 987, 989 (Fla. 1st DCA 2003) (refusing to consider claim on appeal where issue was not presented or asserted to be fundamental error until the reply brief); *Hall v. State*, 823 So. 2d 757 (Fla. 2002); *J.A.B. Enterprises v. Gibbons*, 596 So. 2d 1247, 1250 (Fla. Dist. Ct. App. 1992) ("[A]n issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief."); Fla. R. App. P. 8.210(d). Thus, Petitioner failed to properly present his *Brady* claim to the state court and therefore does not satisfy the exhaustion requirement.

Because Petitioner clearly would be barred from now pursuing these claims in state court, they are procedurally defaulted and foreclosed from federal review absent a showing of cause and prejudice or a fundamental miscarriage of justice. Petitioner makes no claim that he can show cause and prejudice for the default of these claims, and there is nothing in the record that suggests that a fundamental miscarriage of justice would result if the Court does not consider the claims.

Accordingly, only Petitioner's ineffective assistance of counsel claim, properly exhausted by way of his Rule 3.850 motion, will be addressed on the merits.

## Section 2254 Standard of Review

For properly exhausted claims, there are limitations on the scope of this Court's

review. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

## Ineffective Assistance of Counsel

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland* is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

When, as here, the state courts have denied an ineffective assistance of counsel

claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011).  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Id.* at 788.  When combined with the extra layer of deference that § 2254 provides, the result is double deference and

the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### **Petitioner's Claim**

Upon an independent review of the trial record and the state court's disposition of these claims on post-conviction review, and mindful of the high degree of deference that is afforded to the state court's assessment of the merits of Petitioner's claim, the Court concludes that Petitioner has presented no basis for federal habeas relief.

The post-conviction trial court found that Petitioner failed, under *Strickland*, to demonstrate either deficient performance or prejudice. The court found that counsel requested records from the FDLE twice. After the initial request garnered only a 2-3 page conclusion, Petitioner's expert requested "bench notes" from the FDLE. Counsel made a second discovery demand and delivered the produced documents to his expert, who did not request any further documents. When additional notes were eventually produced by the FDLE after trial, they revealed that the test sample used to link Petitioner to the crime scene was half what was recommended by the manufacturer of the DNA kit. The expert's relevant testimony at trial was that there could be no "call" determining a DNA match unless "c" or "s" dots appeared on the test strip. Petitioner's expert testified at the post-conviction evidentiary hearing that his testimony at trial would have been the same had he reviewed the bench notes prior to his testimony, although his testimony may have been "more forceful." The post-conviction trial court ruled that

Petitioner did not meet the prejudice prong of *Strickland* because the size of the test sample would not have changed the judge's ruling on the motion to suppress DNA evidence or the jury's verdict, unless additional evidence was available that the sample size could not have produced test strips with visible dots. App. Exh. AA. Each of these findings is supported by the record.

Based upon this Court's review of the record, the Court is satisfied that there is no reasonable probability that, absent the errors alleged by the Petitioner, the trial judge would have ruled differently on the motion to suppress or the jury would have had a reasonable doubt respecting Petitioner's guilt. *See Strickland*, 466 U.S. at 695. There is thus no reasonable argument that Petitioner's counsel failed to satisfy *Strickland's* deferential standard. *See Harrington*, 131 S.Ct. at 788. Accordingly, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a Writ of Habeas Corpus, Doc. 1, be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS** this 6th day of July 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**